# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**VIDALE TASBY (#330329)**                                    **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, WARDEN, ET AL.**                             **NO. 16-0277-JJB-EWD**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 12, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

VIDALE TASBY (#330329)                                    CIVIL ACTION

VERSUS

N. BURL CAIN, WARDEN, ET AL.                             NO. 16-0277-JJB-EWD

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are the Motion to Dismiss of Defendants Burl Cain, Carol Gilcrease, Matthew Gamble and Darrel Vannoy (R. Doc. 18), the Motion for Summary Judgment of the same Defendants (R. Doc. 22), Plaintiff's Motion for Entry of Judgment, which the Court interprets to be a cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56 (R. Doc. 47),[1] and the Motion to Dismiss of Defendants James LeBlanc and Stephanie Lamartiniere (R. Doc. 91).

*Pro se* Plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against former Warden Burl Cain, current Warden Darrel Vannoy, current or former Mental Health Directors Carol Gilcrease (originally identified as "Carol Duthu"), Ms. Peabody and Ms. Kristy Thomas (originally identified as "Ms. Kelly"), LSP psychiatrists Dr. Gamble and Dr. Reinbold, LSP social worker David Ankenbrand, and the Louisiana Department of Public Safety and Corrections ("DOC"). In his Complaint, as amended, Plaintiff asserts claims related to his long-term segregated confinement at LSP, allegedly without adequate mental health care or treatment. In his Amended Complaint, he has also asserted a claim

---

1       Plaintiff invoked Fed. R. Civ. P. 58 in connection with his Motion for Entry of Judgment. However, because Fed. R. Civ. P. 58 deals principally with only the manner in which Judgments are entered upon disposition of a proceeding and because Plaintiff attached a substantial quantity of substantive documentation as exhibits to his Motion, the Court has interpreted Plaintiff's Motion for Entry of Judgment pursuant to Fed. R. Civ. P. 58 as a Motion for Summary Judgment brought pursuant to Fed. R. Civ. P. 56.

arising under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("RA").[2]

The Court will first address the parties' cross-motions for summary judgment. In this regard, pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986);

---

2       An attempt by the United States Marshal's Office to serve Defendants Ms. Peabody, Ms. Kristy Thomas, Dr. William Reinbold and David Ankenbrand has proven unsuccessful. Specifically, service of process was refused for Defendants Peabody and Thomas at the office of the Louisiana Department of Public Safety and Corrections because Plaintiff did not provide a correct identifying first name for these Defendants and was refused for Defendants Reinbold and Ankenbrand because these Defendants were no longer employed by the Department of Corrections. *See* R. Doc. 15. *See also* R. Doc. 88.

Pursuant to former Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff, without good cause, to serve a defendant within 90 days of commencement of an action is justification for dismissal of that defendant from the proceeding. Although a *pro se* inmate plaintiff is entitled to rely upon service by the United States Marshal, "a plaintiff may not remain silent and do nothing to effectuate such service. At a minimum, a plaintiff should attempt to remedy any apparent service defects of which a plaintiff has knowledge." *Rochon v. Dawson*, 828 F.2d 1107 (5th Cir. 1987).

Plaintiff was notified that service had not been effected as to defendants Peabody, Thomas, Reinbold and Ankenbrand through receipt of the Marshal's Return of Service filed in the record on September 6, 2016. *See* R. Doc. 15. Since then, Plaintiff has failed to take any formal action to substitute the correct names of Defendants Peabody and Thomas, to obtain the last known addresses of Defendants Reinbold and Ankenbrand, or to request that additional efforts be made to have them served. Notwithstanding, it appears that Plaintiff was in receipt of a copy of his medical records and administrative remedy records in October, 2016 that reflected the correct names of Defendants Diane Peabody and Kristen Thomas. *See* R. Docs. 22-3 at p. 10 and 30-2 at p. 102. In addition, despite Plaintiff's knowledge that Defendants Reinbold and Ankenbrand were no longer employed at LSP, he failed to request that they be served at their last known addresses, which is the recognized manner in which service is effected upon State employees who have been separated from employment. It is appropriate, therefore, that Plaintiff's claims asserted against these Defendants be dismissed, without prejudice, for failure of Plaintiff to timely effect service upon them.

Further, and in any event, as discussed at the end of this Magistrate Judge's Report, a Court is authorized to enter summary judgment *sua sponte* in favor of a party who has not requested it provided that notice and an opportunity to respond is provided to the opposing party. *See NL Industries, Inc. v. GHR Energy Corp.*, 940 F.2d 957 (5th Cir. 1991). In the instant case, in the event that Plaintiff may be found to have shown good cause for his failure to timely serve Defendants Peabody, Thomas, Reinbold and Ankenbrand, the Court finds that the entry of summary judgment *sua sponte* in favor of these Defendants is appropriate for the same reasons as are stated in the body of this Report. Plaintiff is advised that he may utilize the 14-day period authorized to him to object to this Report to file any opposition he may have to the Court's determination in this regard. *See* 28 U.S.C. § 1367.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).   A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no genuine issue of material fact.   *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323.   If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record that demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.   *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248. However, whereas summary judgment is appropriate when there is no genuine disputed issue as to any material fact, and the moving party is able to show that he is entitled to judgment as a matter of law, Fed. R. Civ. P. 56, the moving party always bears the initial burden of showing the absence of a genuine issue of material fact.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).   This is done by informing the Court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323.   The nonmoving party is not required to respond to the motion until the movant has made the required showing in support thereof.   *Id*.   It is only after the movant has carried his burden of proof that the burden shifts to the non-movant to show that the entry of summary judgment is not appropriate.   *See Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000).   In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.   *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

Plaintiff moves for summary judgment relying upon the pleadings, a sworn declaration provided "under penalty of perjury," the sworn declarations of co-inmates Noel Dean, Keith Thompson

(together with copies of excerpts from inmate Thompson's prison records), Leavorda Smalley, Andrew Isadore, Adrian M. Dunn, Trivenskey Odom, Ronald Williams, Aaron Jones, Jermaine Favors, Jesse Offord, Quinnard Wilson, Corey Adams, Kerry Sanders, Jared Graham, Shawn Wickem, Joseph Trim, Wade P. Jackson and Troy McCloud, a copy of Plaintiff's Conduct Report, copies of excerpts from Plaintiff's administrative remedy and disciplinary proceedings, copies of excerpts from medical publications, legal opinions and newspaper articles, copies of indigent mail forms, a copy of Plaintiff's medical and mental health records, copies of excerpts from his criminal proceedings and post-conviction relief proceedings, including psychological evaluations undertaken in 1989 and 1993, and a copy of Plaintiff's Enemy List at LSP.

Defendants Burl Cain, Carol Gilcrease, Matthew Gamble and Darrel Vannoy move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of Plaintiff's pertinent administrative remedy proceedings, certified copies of Plaintiff's Master Prison Record, Conduct Record and Location Sheet, certified copies of Plaintiff's Lockdown Review Board Decisions between April 2015 and July 2016, certified copies of Plaintiff's Shower Rosters between April 2015 and October 2016, certified copies of LSP Directive No. 10.013 (re: the "Camp J Management Program"), LSP Directive No. 10.001 (re: "Lockdown"), and DOC Regulation No. B-05-005 (re: "Administrative Remedy Procedure"), certified copies of Plaintiff's medical records between January 2014 and the present, copies of Orders of Dismissal in *Bobby Joe Reickenbacker, et al. v. M.J. "Mike" Foster, Jr., et al.*, Civil Action No. 99-0910-RET-SCR, and the affidavits of Ass't Warden Jonathan London and Defendant Matthew Gamble.

In his Complaint, as amended, Plaintiff alleges that he is a mentally impaired individual who has been housed in segregated confinement at LSP for more than 15 years, now almost 18 years, "with no end in sight." Plaintiff complains that such segregated confinement, *i.e.*, confinement in a small cell alone for 23-24 hours per day, is deleterious to his mental health and has exacerbated his mental

deficiencies and caused physical complications as well. Plaintiff further complains that the conditions of his confinement at Camp J are deplorable, with constant noise and light, the danger of altercations with other inmates, the potential for excessive force by security officers, and exposure to unsanitary conditions. Plaintiff also complains of the use of punitive-style suicide watch cells at LSP that are filthy and uncomfortable. As a result of Plaintiff's segregated confinement, he has allegedly suffered a loss of familial relationships because he has been restricted to non-contact visits and has had to communicate with family members through a wire mesh. In addition, Plaintiff contends that the mental health care system at LSP is grossly inadequate and amounts to cruel and unusual punishment under the Eighth Amendment to the United States Constitution. According to Plaintiff, the alleged inadequacies constitute deliberate indifference to his serious medical needs and to the serious medical needs of other inmates, including the afore-mentioned long-term segregated confinement, a failure to provide one-on-one counseling, group therapy, or rehabilitation programs to mental health prisoners, inadequate mental health staffing at Camp J at LSP, the use of untrained co-inmates as "nurses' aids," the absence of an "urgent medical care system," and the failure of prison officials to abide by a consent decree settlement agreement reached between the Government and Defendants in 2005 in *Reickenbacker v. Foster, supra*. Plaintiff further alleges that he was sexually abused by an LSP social worker assigned to Camp J, Gary Midkiff, that Defendants Dr. Reinbold and Gamble have responded to his reports of suicidal thoughts with comments that he should just kill himself, that he has been retaliated against for participating in the referenced civil action and for seeking mental health treatment, and that he and other inmates have been discriminated against because of their race. Finally, Plaintiff asserts that he has been discriminated against and denied services solely by reason of his mental disability in violation of the ADA and RA.

In response to Plaintiff's allegations, the moving Defendants first assert that Plaintiff lacks standing to assert the rights of other inmates confined at LSP. Defendants are correct in this regard.

Specifically, although Plaintiff includes allegations regarding deprivations that have allegedly been suffered by other inmates at LSP, the law is clear that a *pro se* litigant does not have standing in this Court to assert the civil rights of third parties injured by the alleged unlawful conduct of prison personnel. *See Frost v. McFerrin,* 2014 WL 992803, *2 (W.D. La. Mar. 13, 2014), *citing Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986). Accordingly, Plaintiff's claims asserted on behalf of persons other than himself are subject to dismissal for this reason.

Defendants also assert that certain of Plaintiff's claims are barred by application of the one-year limitations period applicable to claims asserted in Louisiana under § 1983. In this regard, inasmuch as there is no federal statute of limitations for claims brought pursuant to 42 U.S.C. § 1983, a federal court must borrow the forum state's general personal injury limitations period for such claims. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In Louisiana, the applicable period of limitations is one year. La. Civ. Code Art. 3492. Moreover, under federal law, a cause of action under 42 U.S.C. § 1983 accrues "when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995). A plaintiff need not realize that a legal cause of action exists but must only have knowledge of the facts that support a claim. *Id*. Accordingly, inasmuch as Plaintiff has admittedly long been in possession of all pertinent information relative to the claims asserted herein, including specifically his claims relative to his long-term confinement in segregated housing at LSP, it is clear that his claims relative to events occurring more than a year prior to the institution of this civil action (taking into account the additional time during which his administrative remedy proceedings were pending[3]) are prescribed. Thus, considering that Plaintiff

---

3        In computing the applicable limitations period, this Court is obligated to take into account the time during which Plaintiff's administrative grievance was pending within the prison system. *See Harris v. Hegmann*, 198 F.3d 153, 158-59 (5th Cir. 1999) (concluding that the pendency of a properly-filed administrative grievance will act to toll or suspend the running of the one-year limitations period

signed his original federal Complaint herein on May 6, 2016,[4] and taking into account the 74 days that Plaintiff's administrative remedy proceedings were pending, *see* R. Doc. 22-3 at p. 2, all of Plaintiff's claims relative to events preceding February 21, 2015 are time-barred.[5]

Turning to a consideration of Plaintiff's claims arising within the applicable time period, Defendants next contend that certain of Plaintiff's claims are subject to dismissal because Plaintiff has failed to exhaust available administrative remedies relative thereto as mandated by 42 U.S.C. § 1997e. Pursuant to this statute, Plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions. This provision is mandatory and applies broadly to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" *Johnson v. Johnson, supra*, 385 F.3d at 516, *quoting Porter v. Nussle, supra*, 534 U.S. at 525. Further,

---

for a prisoner's claim).

4    Although Plaintiff's Complaint was received and docketed in this Court on May 9, 2016, an inmate's *pro se* Complaint is considered to have been filed when it is presented to prison officials or placed in the prison mailing system for transmission to the Court, not on the date that it is received by the Court. *See Cooper v. Brookshire*, 70 F.3d 377, 379-80 (5th Cir. 1995); *Vicks v. Griffin*, 2008 WL 553186, *3 (E.D. La. Feb. 28, 2008). Accordingly, the Court will utilize May 6, 2016, as Plaintiff's filing date, which is the date that he apparently signed his Complaint and which is therefore the earliest date that he may have submitted this pleading to prison officials for transmission to the Court.

5    There are few specific dates provided by Plaintiff in his pleadings relative to alleged incidences of abuse or wrongdoing by security officers. Notwithstanding, the Court notes that included within the claims that are time-barred would be his claims regarding alleged sexual abuse by LSP social worker Gary Midkiff which, if true, admittedly occurred prior to 2009, *see* R. Doc. 22-3 at p. 102.

the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose. *Id.*

Upon a review of Plaintiff's pertinent administrative grievance No. LSP-2015-0527, *i.e.*, the grievance that he identified as having been filed relative to the claims asserted in this proceeding, the Court concludes that Defendants' assertion is well-taken in this regard in certain respects. Specifically, in Plaintiff's grievance dated February 23, 2015, Plaintiff complained of the alleged violation of his Eighth Amendment constitutional rights as a result of his long-term confinement in segregated housing at LSP without adequate mental health care. Plaintiff complained that long-term segregated confinement has had a deleterious effect upon his mental health and upon the mental health of other inmates confined at LSP, that there has been inadequate mental health staffing in his housing unit, that he has not been provided with one-on-one counseling or group therapy, that he has been denied rehabilitative programs by mental health staff, that there are no preventive policies in place to reduce the threat of the use of chemical agents on mental health inmates,[6] and that his familial relationships have been damaged because he has not been allowed to have contact visits. Plaintiff further asserted that these deficiencies have followed from the failure of prison officials to adequately comply with obligations incurred as a result of the 2005 settlement of the class action lawsuit in which Plaintiff was a named co-plaintiff, *Reickenbacker v. Foster*, *supra*. At the conclusion of Plaintiff's grievance, he summarized his claim by stating that the "foundation" thereof was "based on [the] longterm solitary confinement of the mentall[y] ill (severe)" at LSP in violation of the Eighth Amendment and 42 U.S.C. § 1983. *See* R. Doc. 22-3 at p. 8. Plaintiff included two additional assertions in the referenced grievance, specifically (1) that Dr. William Reinbold had exhibited deliberate indifference to Plaintiff's serious medical needs on an unstated date by encouraging Plaintiff

---

6      Plaintiff concedes that he himself has not been subjected to the application of chemical agents, but he complains that security officials have utilized chemical agents upon other inmates without taking into account their mental deficiencies.

to "just die" when Plaintiff complained of suicidal thoughts, and (2) that he had been retaliated against for seeking mental health treatment. Plaintiff provided only one example of such retaliation, however, *i.e.,* that when his aunt wrote to prison officials to express concern about Plaintiff's well-being in late 2014, Plaintiff's prescription for the medication Wellbutrin was subsequently decreased without warning or justification from 200mg to 150 mg.

Based on the foregoing recitation of complaints, the Court finds that Plaintiff has adequately presented, and therefore successfully exhausted, the following claims specifically included in Plaintiff's grievance. These claims may be summarized as including (1) that he has been subjected to long-term segregated confinement without adequate mental health treatment, (2) that the terms and provisions of the class action settlement agreement reached in *Reickenbacker v. Foster*, *supra,* have not been complied with, (3) that he has been retaliated against for requesting or complaining about his medical care, and (4) that his familial relationships have been damaged because he has been denied contact visitation.[7] However, in the referenced grievance, there is no mention whatever of any purported discrimination against Plaintiff based upon his race as is asserted in Plaintiff's Complaint. Nor is there any reference in the grievance to any purported retaliation for Plaintiff's exercise of his First Amendment rights by participating as a co-plaintiff in the referenced class action lawsuit. Nor is there any reference to alleged unconstitutional conditions of confinement in his housing unit, either with regard to generally unsanitary conditions, to excessive noise or lighting, to a generalized danger of harm from co-inmates and security officers, or with regard to the use of suicide watch cells. Nor is there any assertion that Defendant Dr. Gamble has personally been deliberately indifferent to

---

[7] The Court has not included Plaintiff's claim asserted against Defendant Reinbold. Even if the alleged incident involving Dr. Reinbold occurred within the applicable limitations period and even if this isolated incident may be properly characterized as rising to the level of a claim of deliberate indifference to Plaintiff's serious medical needs, the Court will recommend that Plaintiff's claim asserted against Dr. Reinbold be dismissed for failure of Plaintiff to timely effect service against this Defendant.

Plaintiff's serious medical needs by encouraging Plaintiff to commit suicide.[8] Finally, Plaintiff makes no reference in his grievance to the statutory provisions of the ADA or RA nor asserts that he is seeking to obtain any of the benefits provided under these statutes. As such, Plaintiff has failed to adequately assert these claims in connection with the referenced grievance. Consequently, the Court concludes that Plaintiff's grievance failed to provide sufficient notice to prison administrators that Plaintiff was attempting to assert such claims so as to "provide administrators with a fair opportunity under the circumstances to address the problem" now presented before this Court. *See Johnson v. Johnson, supra*, 385 F.3d at 517. Accordingly, Plaintiff's claims regarding racial discrimination, retaliation for participation in the class action lawsuit, unconstitutional conditions of confinement, the use of suicide watch cells, deliberate indifference on the part of Defendant Gamble, and claims asserted under the ADA and RA in this proceeding are subject to dismissal for failure to exhaust administrative remedies relative thereto pursuant to 42 U.S.C. § 1997e. *See, e.g., Riley v. Kazmierczak*, 497 Fed. Appx. 442, 443 (5th Cir. 2012) (dismissing ADA claims asserted by a prisoner because of a failure to exhaust administrative remedies).

In addition to the foregoing, Plaintiff has included in his later filings references to events that have occurred subsequent to the filing of the original Complaint in this case. Specifically, Plaintiff has referred to an incident in August 2016 when he was involved in a physical confrontation with Defendant Dr. Gamble and security officers that apparently resulted in Plaintiff suffering a fractured bone in his hand and in the imposition of disciplinary charges against Plaintiff. *See* R. Doc. 46 at pp. 10-15. In addition, Plaintiff has included references to incidents occurring in December 2016. However, inasmuch as the law requires that an inmate complainant present and exhaust administrative

---

[8]     Whereas Plaintiff made a factual assertion in his grievance that Defendant Reinbold encouraged Plaintiff to commit suicide, Plaintiff failed to make this assertion relative to Defendant Gamble and so provided no notice to prison officials that Plaintiff intended to assert a claim against Defendant Gamble in this regard.

remedies *before* asserting a claim relative thereto in federal court, *see Trevino v. Sanders*, 202 F.3d 265 (5th Cir. 1999), it is clear that his claims relative to these incidents were unexhausted both when the instant proceeding was commenced and when Plaintiff presented them in his Amended Complaint and, thus, are not properly before the Court. Accordingly, these claims should also be dismissed from this proceeding.

Turning to a consideration of the four (4) claims enumerated above that the Court finds to have been administratively exhausted as mandated by 42 U.S.C. § 1997e, the Court will address each of these contentions below. In responding to these claims, Defendants assert that they are entitled to qualified immunity in connection with Plaintiff's claims. Specifically, Defendants contend that Plaintiff has failed to sufficiently show conduct on the part of the named Defendants that rises to the level of a violation of Plaintiff's federal constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). Taking the facts as alleged in the light most favorable to Plaintiff, the Court considers whether Defendants' conduct violated Plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement"). Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Saucier v. Katz, supra*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted. *Id.* at 202. The assertion of the qualified immunity

defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to Plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.

Undertaking the qualified immunity analysis, the Court finds, as discussed hereafter, that Defendants are entitled to dismissal of the claims asserted against them. Specifically, the Court concludes that Plaintiff has failed to come forward with evidence sufficient to overcome Defendants' assertion of the defense of qualified immunity.

Initially, the Court agrees with Defendants' contention that Plaintiff has failed to state a viable claim for monetary damages against them in their official capacity. Specifically, 42 U.S.C. § 1983 does not provide a federal forum for a litigant seeking to recover monetary damages against a state official acting in an official capacity because such an official is not seen to be a "person" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989); *see also Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Additionally, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity claims and made clear that a claim asserted against a state official in an official capacity for monetary damages is treated as essentially a claim asserted against the state and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, Plaintiff's claim for monetary damages asserted against Defendants in an official capacity is subject to dismissal. In contrast, Plaintiff's claim for monetary damages asserted against Defendants in their individual capacity remains theoretically viable because a claim for monetary damages asserted against a state official in an individual capacity, seeking to impose personal liability for actions taken by the official under color of state law, is not

treated as a suit against the state. *Id.* at 29. In addition, Plaintiff also asserts herein a claim for prospective injunctive relief, and a claim for injunctive relief asserted against a state official in an official capacity is not prohibited under the Eleventh Amendment, specifically because such a claim is not seen to be a claim asserted against the state. *See Will v. Michigan Department of State Police, supra*, 491 U.S. at 71 n. 10; 15 Am. Jur. 2d Civil Rights § 101.

With regard to Plaintiff's claims that are not barred by the Eleventh Amendment, the Court will first address Plaintiff's claim that the terms and provisions of the class action settlement agreement reached in *Reickenbacker v. Foster*, *supra,* have not been complied with and that he is therefore entitled to seek further relief in connection therewith. The Court has previously addressed this claim in the context of a motion by Plaintiff to effectively re-open the previously dismissed lawsuit. *See* R. Docs. 10 and 77. In rejecting Plaintiff's claim for relief in connection with that motion, the Court stated:

> In *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994), the Supreme Court explained that "[e]nforcement of [a] settlement agreement … is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." The Court held that a court's "ancillary jurisdiction" "to manage its proceedings, vindicate its authority, and effectuate its decrees" provides such an independent jurisdictional basis to enforce a settlement agreement only if "the parties' obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of dismissal." The Court specified two ways in which a court may make a settlement agreement part of its dismissal order: "either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order."

R. Doc. 77, *citing Hospitality House, Inc. v. Gilbert*, 298 F.3d 424, 430 (5th Cir. 2002) (citations omitted). This Court went on to conclude, after a review of the Dismissal Orders in Plaintiff's previously dismissed case, that the Court's Dismissal Orders made no provision for retention of jurisdiction and did not incorporate the terms of the settlement agreement therein. Accordingly, the Court found that it lacked jurisdiction to enforce the terms of the settlement agreement in *Reickenbacker* and that Plaintiff was not entitled to append his claims herein to that prior litigation.

The same reasoning applies at the present time. Whereas Plaintiff may still assert in this lawsuit that one or more aspects of his present confinement are in violation of the United States

Constitution, such a claim, addressed below, is a constitutional claim arising under 42 U.S.C. § 1983 and is not a claim arising in connection with the previous lawsuit, over which this Court no longer has jurisdiction.   Accordingly, this aspect of Plaintiff's claim should be dismissed.

Plaintiff also asserts a claim that he has been retaliated against in response to his requests for mental health care and complaints regarding deficiencies therein.   In this regard, the law is well-settled that prison officials may not retaliate against an inmate for exercising his First Amendment right to seek redress of grievances by complaining to prison officials through proper channels about alleged mistreatment by prison personnel.   *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2006); *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995).   Claims of retaliation by prison inmates are regarded with skepticism, however, lest federal courts embroil themselves in every adverse act that occurs within a penal institution.   *Woods v. Smith, supra,* 60 F.3d at 1166.   To prevail on a claim of retaliation, therefore, an inmate must be able to establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendants intentionally retaliated against him for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against him by the defendants, and (4) that there is causation, *i.e.*, that but for the retaliatory motive, the adverse action would not have occurred.   *Morris v. Powell, supra,* 449 F.3d at 684; *Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir. 1999). Further, the inmate must allege more than his personal belief that he is the victim of retaliation.   *Jones v. Greninger, supra,* 188 F.3d at 325; *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997).   To demonstrate the requisite retaliatory intent on the Defendants' part, the inmate must allege facts that directly indicate such retaliatory intent or allege a chronology of events from which retaliation may plausibly be inferred.   *Woods v. Smith, supra,* 60 F.3d at 1166.   Regarding the element of causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained of adverse action would not have occurred.   *Johnson v. Greninger, supra,* 110 F.3d at 310; *Woods v. Smith, supra,* 60 F.3d at 1166.

Plaintiff's Complaint in this case, and the showing made, fail to set forth direct evidence of motivation, nor do they set forth a chronology of events from which retaliation may plausibly be inferred. Plaintiff simply alleges in conclusory fashion that Defendants have denied him medical care or have taken other action in retaliation for his requests for such care or complaints regarding same. Plaintiff does not, however, provide the dates upon which any specific requests or complaints were made, the dates upon which he was allegedly retaliated against in response thereto, the identity of the persons who may have undertaken to retaliate against him, or the nature of any specific acts of retaliation. Nor does he allege that any statements were voiced by any person that explicitly suggested a retaliatory motive or intent. Accordingly, his non-specific conclusory allegations of retaliation are not sufficient to support a claim relative thereto. The only specific allegation of retaliation – included in Plaintiff's administrative grievance – that may have provided notice to prison officials of a retaliatory incident is Plaintiff's assertion that his aunt wrote to Warden Burl Cain on one occasion in late 2014 expressing concern about Plaintiff's well-being, after which Plaintiff's Wellbutrin prescription was reduced without notice from 200 mg to 150 mg. This allegation is insufficient to establish an intent on the part of any Defendant to retaliate against Plaintiff. In the first place, the First Amendment protects Plaintiff's right to personally communicate, through proper channels, his complaints about the wrongful conduct of prison officials. As such, an item of correspondence addressed to prison officials by Plaintiff's aunt does not qualify as a complaint made by him through proper channels that would support a claim of retaliation. *See Spann v. Strain*, 201 WL 7626574, *8 (E.D. La. Dec. 9, 2016). In any event, the record reflects that the referenced correspondence was written on October 17, 2014, and Warden Cain responded thereto in writing on October 30, 2014 by assuring Plaintiff's aunt that Plaintiff was receiving appropriate care and attention from the prison medical department. *See* R. Doc. 22-3 at pp. 103-04. These dates pre-date the filing of Plaintiff's Complaint by more than a year and suggest that Plaintiff's claim of retaliation in connection therewith is time-barred. Further, and notwithstanding, the record reflects that when Plaintiff asserted a

complaint about the diminished prescription through proper channels, *i.e.*, through the filing of an administrative grievance, his Wellbutrin prescription was reinstated at the higher dosage. *See id*. at p. 10. As such, Plaintiff's allegations amount to no more than a conclusory assertion of his mere personal belief that he was retaliated against. This is not a sufficient factual basis to support a claim of retaliation. Accordingly, this claim is subject to dismissal as well.

Plaintiff next asserts that because of his confinement in Camp J, he has not been allowed contact visits with family members, and this has harmed his familial relationships. Notwithstanding, the law is clear that convicted inmates have no absolute constitutional right to visitation. *Staggs v. Johnson*, 228 F.3d 409 (5th Cir. 2000). Nor is there any constitutional right to contact visitation. *See Clark v. Woods*, 2001 WL 123668, *2 (N.D. Tex. Jan. 16, 2001). Further, it is well-settled that "[v]isitation privileges are a matter subject to the discretion of prison officials," and prison officials are accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order. *See Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999). As a result, limitations upon the exercise of an inmate's visitation rights may be imposed "if they are necessary to meet legitimate penological objectives, such as rehabilitation and the maintenance of security and order." *Lynott v. Henderson*, 610 F.2d 340, 342-43 (5th Cir. 1980). *See also Toppins v. Day*, 73 Fed. Appx. 84, *3 (5th Cir. 2003). In evaluating whether specific limitations upon visitation are supportable, the courts look to see whether the prison's visitation policies further the penological objectives that are invoked to support them. *Lynott v. Henderson, supra*. *See also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (recognizing that courts may uphold visitation restrictions that "bear a rational relation to legitimate penological interests"); *Turner v. Safely*, 482 U.S. 78, 89 (1987) (providing a balancing test for determining the reasonableness of regulations that limit the rights of inmates). "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to [security] considerations[,] courts should ordinarily defer

to their expert judgment in such matters." *Thorne v. Jones*, 765 F.2d 1270, 1275 (5th Cir. 1985), *quoting Block v. Rutherford*, 468 U.S. 576, 584-85 (1984).

In the instant case, it appears that Plaintiff has been assigned to a housing unit, the Camp J Management Program, that has been created and maintained for the purpose of encouraging behavior modification on the part of inmates and is designed for inmates who have exhibited an unwillingness to obey prison rules. It consists of three levels, each with greater or lesser restrictions and with greater or lesser limitations upon privileges. Inmates assigned to the Camp J Management Program are reviewed at regular intervals to determine whether their conduct may warrant a transfer to a higher level with greater privileges or, once they reach Level 3 of the Program, whether they may be released to another less-restrictive housing unit within the institution. Among the limitations that are imposed upon inmates assigned to Camp J are, *inter alia,* limitations upon their property, their exercise, their commissary privileges and their visitation. In the instant case, Plaintiff does not allege that he has been denied all visitation; only that he has been denied contact visitation. This Court is unwilling to conclude that the imposition of a limitation upon contact visitation to inmates who have shown an inability or unwillingness to adhere to prison rules is a restriction that does not bear a rational relationship to "legitimate penological objectives, such as rehabilitation and the maintenance of security and order." Accordingly, the Court will defer to the discretion of prison officials in this context. The Court encourages Plaintiff to conduct himself in such a way that his behavior may result in re-classification to a housing assignment that will afford him a greater opportunity for visitation and other privileges.[9]

---

[9] The record reflects that Plaintiff has in fact succeeded in moderating his behavior at different times and to different extents because he has been transferred within the different levels of the Camp J Management Program based upon his behavior and has also been transferred to the Transitional Unit on several occasions. In fact, the record reflects that Plaintiff has been recently again been transferred to housing at the Transitional Unit at LSP.

Finally, the Court will address Plaintiff's claim that forms the "foundation[al]" basis for his claim before this Court as stated in his pertinent administrative grievance, *i.e.*, that he has been subjected to long-term segregated confinement without adequate mental health treatment in violation of the Eighth Amendment. The Court views this claim as having two separate components, the first being whether Plaintiff has shown that he has been subjected to deliberate medical indifference as a result of the medical care that has been provided to him and the second being whether the complicating factor of his long-term segregated confinement has rendered the conditions of his confinement constitutionally unconscionable.

First, in order for an inmate to prevail on an Eighth Amendment claim for the deprivation of medical care, a prisoner must be able to show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Thomas v. Carter*, 593 Fed. Appx. 338, 342 (5th Cir. 2014), *citing Estelle v. Gamble*, 429 U.S. 97 (1976). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue because a prisoner's mere disagreement with his medical treatment, absent exceptional circumstances, does not support a claim of deliberate medical indifference. *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *See Zaunbrecher v. Gaudin,* ___ Fed. Appx. 340 (5th Cir. 2016). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). A prison official acts with deliberate indifference only if the official (1) "knows that inmates face a substantial risk of serious bodily harm," and (2) "disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, *supra,* 463 F.3d at 346, *quoting Farmer v. Brennan, supra,* 511 U.S. at 847. The deliberate indifference standard sets a very high bar. Plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him

incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006), *citing Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

In the instant case, Plaintiff's showing does not reflect that Defendants have been deliberately indifferent to his serious medical needs. To the contrary, the evidence reflects that his medical complaints have been addressed and have not been ignored by Defendants. Specifically, Plaintiff's medical records and the affidavit of Defendant Dr. Gamble reflect that Plaintiff has been repeatedly evaluated and treated by mental health practitioners at LSP. He has been assigned a mental health Level of Care of 4, which is assigned to "offenders with any Axis I diagnosis excluding severe mental illness (SMI) … or those requiring mental health interventions within the last year." Offenders with this Level of Care are provided with mental health contacts at a minimum of every 180 days. In addition to these scheduled contacts, medical technicians routinely conduct pill call on the cellblock tiers on a daily basis, and Plaintiff is allowed to fill out sick call request forms and ask therein to see a social worker or psychologist or to report symptoms or complaints that may warrant medical or mental health intervention. In addition, Plaintiff concedes that a social worker is assigned to Camp J and visits the cellblock tiers on a daily basis, at which time Plaintiff can interact with the social worker or signify that he is in need of additional treatment or attention. Whereas Plaintiff complains that the assigned social worker accords little time or attention to inmates during these "rounds," there is no suggestion that inmates' complaints are ignored. Finally, co-inmate "nurses' aids" are assigned to the cell tiers and conduct routine rounds on the tiers for the purpose of alerting security officers to imminent threats of suicide or other emergency situations. Although these tier-walkers are not trained

to provide treatment, they are instructed in recognizing the signs and symptoms of a need for emergency care. In addition, inmates are entitled to alert security officers when they perceive themselves to be facing a medical emergency and are thus able, by declaring an emergency, to obtain expedited attention from medical officers.

Based on the foregoing, the crux of Plaintiff's complaint appears to be, not that he has been denied medical attention entirely, but rather that such attention is or has been inadequate. He is apparently unhappy with the care that has been provided, and he believes that additional care is warranted in the form of additional one-on-one or group counseling and other rehabilitative programs or facilities. Specifically, he expresses disagreement with the determination by prison medical personnel that his condition does not warrant placement in a specialized mental health facility, the "Transitional Unit," or a hospital setting at the institution where greater attention can be provided to him. Notwithstanding, the classification of inmates is a matter left to the broad general discretion of prison officials, and a failure to refer an inmate plaintiff for additional treatment, diagnostic testing or evaluation is a matter of professional medical judgment that the courts will not normally second-guess in the context of a claim of deliberate medical indifference. *See Cuellar v. Livingston*, 321 Fed. Appx. 373, 374 (5th Cir. 2009) (upholding the dismissal of an inmate's claim as frivolous where he complained of a failure to refer him to a specialist, noting that "the question whether 'additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment,'" *quoting Estelle v. Gamble, supra*, 429 U.S. at 107). *See also Corte v. Schaffer*, 24 F.3d 237 (5th Cir. 1994) (concluding that, contrary to the plaintiff's allegation that he had received "no treatment" and that he needed a referral to a specialist, he had failed to demonstrate deliberate indifference where he had been seen and evaluated by prison medical personnel). Further, as noted above, although the plaintiff is apparently dissatisfied with the medical care that has been provided to him at LSP, such dissatisfaction does not alone support a claim of deliberate medical indifference.

The medical records make clear that Plaintiff has been seen by mental health workers at LSP on a regular basis, including social workers, psychologists and psychiatrists, over 40 times since January 2014. *See* Affidavit of Dr. Matthew Gamble, R. Doc. 24-11. *See also* R. Docs. 68 and 68-1. His Level of Care has been repeatedly evaluated, and Plaintiff has long been maintained at a Level of Care 4 on a One-to-Five scale. Level of Care 4 does not include a diagnosis of "severe mental illness" and is the least serious mental health classification other than Level 5, which latter Level signifies that no mental health intervention or medication has been needed for more than a year. Plaintiff's most recent diagnoses have included anti-social personality disorder, exhibitionism and unspecified impulse control, disruptive and conduct disorders, with some indication that Plaintiff may be malingering and/or exaggerating his complaints to a degree. Plaintiff's records reflect that he has expressed suicidal thoughts on repeated occasions, when this occurs, he has been placed on "suicide watch," which includes additional periodic monitoring, removal of items that can be utilized for self-harm, and additional interactions with mental health personnel. Plaintiff's records also reflect that on numerous occasions, when interacting with mental health personnel, he has indicated that he has not been experiencing any mental health distress. Plaintiff has also been prescribed medications, including Risperdal and Wellbutrin, that have been deemed appropriate for his mental health disorders by prison psychiatrists. In short, Plaintiff's complaints have not been ignored, and he has been provided with treatment and medication believed to be appropriate for his condition. Accordingly, Plaintiff has failed to show that Defendants have been deliberately indifferent to his serious medical needs.

Turning to Plaintiff's claim that his mental health disorder has been aggravated by the conditions to which he has been subjected while confined in segregated confinement at LSP, *i.e.,* by the limitations and restrictions imposed upon him as a result of his long-term confinement at that classification level, this claim may be seen to arise under the Eighth Amendment to the United States Constitution and its prohibition against cruel and unusual punishment, which provision prohibits the

unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991), *citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The prohibition against cruel and unusual punishment, however, mandates only that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). *See also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that "[t]he Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones"). A constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina County, Texas*, 31 F.3d 331, 334 (5th Cir. 1994), *citing Wilson v. Seiter, supra*, 501 U.S. at 304. Second, under a subjective standard, the Court must determine that the prison official responsible for the deprivation has been "deliberately indifferent to inmate health or safety." *Farmer v. Brennan, supra*, 511 U.S. at 837. In applying this standard, the determinative question is whether a defendant prison official subjectively knew that an inmate claimant faced a substantial risk of serious harm, yet disregarded that risk by failing to take reasonable steps to abate it. *Id*. Specifically, the prison official must be found to have been personally aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and the official must also be found to have drawn the inference. *Id*. at 837. While some conditions of confinement may establish an Eighth Amendment violation "in combination," when each would not do so alone, this will occur only when those conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Wilson v. Seiter, supra*, 501 U.S. at 305. The deliberate indifference standard is appropriately applied to the plaintiff's allegations regarding the conditions of his confinement. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995); *Wilson v. Seiter, supra*, 501 U.S. at 303. Conclusory allegations, however, are not sufficient, and a

plaintiff must provide facts to support what are otherwise broad and conclusory allegations of wrongdoing. *See Rougley v. GEO Group*, 2011 WL 7796488, *3 (W.D. La. Nov. 7, 2011).

Applying the foregoing standard, the Court finds that Plaintiff has failed to make a showing sufficient to establish that the conditions to which he has been subjected are violative of the Eighth Amendment. Specifically, he does not allege that he is unfed, unclothed, unhoused, or unsafe. Rather, his "foundation[al]" contention herein is that his 15 to 18-plus years in extended lockdown has amounted to cruel and unusual punishment and has aggravated his medical conditions. Notwithstanding, the record reflects that Plaintiff's classification to extended lockdown has not been the result of mere arbitrary whim on the part of prison officials. To the contrary, Plaintiff has engaged in behavior that has resulted in more than 190 disciplinary write-ups since his confinement began in 1993. These write-ups have included but are not limited to serious "Schedule B" offenses at LSP such as Defiance, Aggravated Disobedience, Contraband, Property Destruction, Fighting, Theft, and multiple instances of Aggravated Sex Offense. *See* R. Doc. 22-4 at pp 5-17. Whereas the Court is mindful that Plaintiff's mental health deficiencies, variously described as being "unspecific disruptive impulse control and conduct" disorders, *see* R. Doc. 22-3 at p. 19, may make it more difficult for him to comply with prison rules and refrain from acting out in a destructive fashion, Plaintiff has been prescribed medications that address his mental disorders and has been seen and evaluated by mental health care personnel in an attempt to address these difficulties and improve his behavior. He has been assessed and provided with a Mental Health Plan of Care, *see* R. Doc. 46-2 at p. 4, that recognizes his limitations and seeks to set goals that will allow for the development of "appropiate [sic] social skills for living in a lesser restrictive housing assignment." As previously noted, Plaintiff's classification to segregated confinement is not theoretically unending, and he is evaluated at regular intervals to determine whether he can be transferred to a classification level or a housing assignment that affords him greater freedom and fewer limitations. In fact, the record reflects that Plaintiff was

transferred to Level 3 of the Camp J Management Program in late 2016 and has since been transferred

from the Camp J Management Program to the Transitional Unit at LSP as he has requested. *See* R.

Doc. 113.

Based on the foregoing, the Court finds that Plaintiff will be unable to establish that Defendants

have been deliberately indifferent to his health or safety in classifying him to segregated confinement

under the facts of this case. As explained in a recent decision of this Court, in which the Court

rejected an inmate-plaintiff's contention that his 27-plus years in segregated confinement under similar

circumstances was violative of the Eighth Amendment, including a contention by the plaintiff that such

confinement had resulted in serious psychological disorders:

> The isolation inherent in extended lockdown is only "constitutionally objectionable"
> when imposed without penological justification. Plaintiff in this case has received 87
> disciplinary write-ups since he stabbed another inmate to death on April 28, 1989.
> These write-ups include, but are not limited to, contraband, aggravated disobedience,
> aggravated sex offense, defiance, property destruction, fighting, aggressive
> malingering, and gambling…. Prison officials are afforded "wide-ranging deference"
> in maintaining institutional order and control. Where, as here, Plaintiff's "disruptive
> behavior" raises "security concern[s]," the Eighth Amendment affords him no relief.

*See* Ruling dated June 22, 2016 in *Jeffrey Jerome Fussell v. Darrell Vannoy*, Civil Action No. 13-

0571-BAJ-EWD (citations omitted). The Court further went on to state:

> The Court does not question that Plaintiff's 27-plus years in solitary confinement have
> caused him significant harm. "[P]lenty of medical and psychological literature" all-
> but confirms as much. The question, however, is whether Defendant has shown
> deliberate indifference to Plaintiff's health or safety.

*Id*. (citation omitted). In finding that no deliberate indifference had been shown, the Court noted that

Plaintiff was "by all accounts, actively being treated for the injuries of which he complains." This

Court is well-aware in this context that the fact of long-term segregated confinement carries with it

substantial health risks, and courts have been grappling with this problem in recent years. No

controlling precedent has been discovered, however, that establishes that, under the circumstances set

forth herein, the maintenance of Plaintiff is a restrictive environment in light of his almost-continuous

disruptive behavior is a violation of his Eighth Amendment constitutional rights.    As such, the Court finds that Plaintiff has not overcome Defendants' assertion of qualified immunity and that Defendants are entitled to summary judgment on this basis.

Finally, the Court finds that the resolution of the parties' cross-motions for summary judgment and the determination that the moving Defendants, N. Burl Cain, Carol Gilcrease, Dr. Matthew Gamble and Darrel Vannoy, are entitled to summary judgment herein effectively obviates the need for the Court to address the pending Motion to Dismiss of these Defendants (R. Doc. 18).    In addition, the Court finds that the evidence and reasoning applied herein is equally applicable to Plaintiff's claims asserted against Defendants James LeBlanc and Stephanie Lamartiniere and obviates the need to address their separate pending Motion to Dismiss (R. Doc. 91).    In this regard, where a party has moved for summary judgment, and the record developed on the party's motion reveals that one or more other parties may be entitled to summary judgment, the Court has discretion to grant summary judgment *sua sponte* even though no formal motion has been filed.    *See NL Industries, Inc. v. GHR Energy Corp.*, 940 F.2d 957 (5th Cir. 1991); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442 (5th Cir. 1991); *Marriott Bros. v. Gage*, 911 F.2d 1105 (5th Cir. 1990).    In the instant case, Plaintiff's claims asserted against Defendants James LeBlanc and Stephanie Lamartiniere are essentially identical to his claims asserted against the Defendants who the Court has found to be entitled to summary judgment.    In addition, it is clear that Defendants LeBlanc and Lamartiniere have acted in the role of purely supervisory defendants, against whom Plaintiff has failed to allege direct and personal involvement in the alleged constitutional violations as required for liability under § 1983.    *See Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983).    Accordingly, the Court concludes that the entry of summary judgment *sua sponte* in favor of Defendants LeBlanc and Lamartiniere is appropriate in this case.    However, inasmuch as before summary judgment may be granted in favor of a party who has not requested it, notice to the adverse party must be given, *NL Industries*

*v. GHR Energy Corp., supra.*, the Court advises Plaintiff that this Magistrate Judge's Report provides such notice, and Plaintiff may utilize the 14-day period provided by 28 U.S.C. § 636(b)(1), to oppose the Court's determination in this regard.[10]

Whereas Plaintiff seeks to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the Court has original jurisdiction, if the Court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having considered the allegations of Plaintiff's Complaint and having recommended that Plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over Plaintiff's state law claims and that Plaintiff's claims asserted against Defendants Ms. Peabody,

---

10      There are several motions filed by Plaintiff that remain pending in this proceeding, including a Request for Leave of Court to "Motion for Further Relief" (R. Doc. 39), a Request for Leave of Court to "Present Extradinary [sic] Plea" (R. Doc. 41), a Request for a Stay [of] all Proceedings" pending the grant of his "Extraordinary Pleading" (R. Doc. 43), a Request for "Factual Development(s) Ect. Of These Extraordinary Pleadings" (R. Doc. 45), a Request for Leave of Court to File Motion to Intervene (R. Doc. 46), and a Motion-Order to Consolidate this proceeding with another civil action pending before this Court, *Lewis v. Cain*, Civil Action No. 15-0318-BAJ-RLB (R. Doc. 66). These various Motions are voluminous, difficult to understand, repetitive of other claims and assertions in Plaintiff's many filings in this case, and generally seek relief to which Plaintiff is not entitled, including but not limited to (1) enforcement of the settlement agreement in *Reickenbacker v. Foster, supra*, (2) assistance/intervention by the Court in securing medical attention and a so-called "releasal from illegal restraints," (3) assistance with his post-conviction relief proceedings pending in Caddo Parish, Louisiana, (4) compliance with the ADA and RA, (5) appointment of an expert counsel to assist him with his claims, (6) intervention by the "U.S. Justice Dept.," and (7) assistance with obtaining medical treatment for "temporal lobe disorder," which is a neurological condition that Plaintiff has apparently mistakenly conjoined with his previously diagnosed "T.M.J." disorder (temporomandibular joint disorder). Based on the conclusion of this Court that Plaintiff has failed to establish his entitlement to relief in this case, the Court recommends that these pending Motions be dismissed.

Kristen Thomas, Dr. Reinbold and David Ankenbrand be dismissed for failure of Plaintiff to timely effect service against these Defendants in accordance with Fed. R. Civ. P. 4(m). It is further recommended that Plaintiff's Motion for Entry of Judgment (R. Doc. 47) be denied and that the Motion for Summary Judgment of Defendants N. Burl Cain, Carol Gilcrease, Dr. Matthew Gamble and Darrel Vannoy (R. Doc. 22) be granted, dismissing Plaintiff's claims asserted against these Defendants, with prejudice. It is further recommended that summary judgment be granted *sua sponte* in favor of Defendants James LeBlanc and Stephanie Lamartiniere – and alternatively in favor of Defendants Ms. Peabody, Kristen Thomas, Dr. Reinbold and David Ankenbrand – for the same reasons stated in favor of Defendants N. Burl Cain, Carol Gilcrease, Dr. Matthew Gamble and Darrel Vannoy. Finally, it is recommended that the pending Motions to Dismiss of Defendants N. Burl Cain, Carol Gilcrease, Dr. Matthew Gamble, Darrel Vannoy, James LeBlanc and Stephanie Lamartiniere (R. Docs. 18 and 91) be denied as moot and that all other pending motions be denied.

Signed in Baton Rouge, Louisiana, on September 12, 2017.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**